# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

## WESTERN DIVISION

| | |
|---|---|
| ANTOINETTE M. PROSSER<br>250 Joliet Ave.<br>Cincinnati, OH 45215 | Case No. **1:10CV441**<br><br>**J. BARRETT** |
| Plaintiff | **Complaint to Enforce Ohio Revised Code §1345.01 *et seq.*, for Breach of Contract, and for Fraudulent Inducement** |
| vs. | |
| NATIONAL COLLEGE OF VIRGINIA, INC.<br>Formerly known as NATIONAL COLLEGE OF BUSINESS AND TECHNOLOGY, INC.<br>1813 East Main St.<br>Salem Virginia, 24153 | **with Jury Demand** |
| Defendant. | |

## JURISDICTION

Jurisdiction of this matter is based upon diversity of citizenship pursuant to 28 U.S.C. §1332.

## PARTIES

1. Plaintiff, Antoinette M. Prosser, (hereinafter *Prosser*) is a natural person who entered the surgical technology education program provided by NATIONAL COLLEGE OF BUSINESS AND TECHNOLOGY, INC. doing business as NATIONAL COLLEGE and as NATIONAL COLLEGE - CINCINNATI. During July 2009, Defendant, NATIONAL COLLEGE OF VIRGINIA, INC. ( referred to hereinafter as *National College*) was named NATIONAL COLLEGE OF BUSINESS AND TECHNOLOGY, INC. Defendant is registered as a Virginia corporation,

doing business in Ohio. Plaintiff attended classes at National College's campus in Hamilton County Ohio, located at 6871 Steger Dr., Cincinnati, Ohio.

### CLAIM ONE - Ohio Consumer Sales Practices Act Claims

2. Prosser is a *consumer* as defined by Ohio Revised Code §1345.01(D), at all relevant times. During December 2006, Prosser entered said transaction primarily for personal and family purposes. Prosser began classes on about March 12, 2007. Prosser entered continuing consumer transactions at the beginning of each college term.

3. National College is a *supplier* as defined by ORC §1345.019( C). It is not a business whose transactions, with its customers, are excluded from the definition of *consumer transaction* or from the scope of ORC §1345.01 *et seq*. Pursuant to ORC § 3332.16 transactions with career colleges, such as National College, are consumer transactions subject to ORC Chapter 1345.

4. National College violated the Ohio Deceptive Sales Practices Act, ORC §1345.01, *et seq*. National College's conduct was intentionally deceptive, in violation of ORC § 1345.02, and it was intentionally unconscionable, in violation of ORC § 1345.03.

5. National College's Surgical Technologist Program was not accredited by the Commission on Accreditation of Allied Health Education Programs (herein *CAAHEP*) until late May, 2010.

6. National College arranged financing through federally insured educational loans and grants. National College was paid approximately $29,000 by or on behalf of Prosser.

7. National College's admission representatives and its other agents represented to Prosser that National College's surgical technology program, in Cincinnati was accredited.

2

Advertisements received by Prosser from National College contained no exclusions or limitations that the surgical technology program was not accredited.

8.  During December 2007 National College's employees represented in writing that accreditation would be obtained from CAAHEP by the graduation of the first class. Subsequently, National College's employee orally promised that accreditation would be obtained.

9.  National College's director and its Surgical Technology Director and its other agents represented to Prosser and promised that upon graduation from the surgical technology associate degree program, she would be qualified to sit for the surgical technologist's certification examination.

10. During December 2006, National College's admission representative and its other agents intentionally misrepresented that the necessary extern programs were in place with local hospitals. National College's admission representative misled Prosser into believing that there would be no waiting lists and no delays in the surgical technology clinical placements. Prosser relied on these misrepresentations. Prosser's primary reason for enrolling was that there were no waiting lists. After completion of her didactic courses, Prosser had to wait five months, for placement in a clinical externship. Her clinicals were successfully completed during October 2009. National College's Surgical Tech program was accredited seven months after Prosser completed her externship.

11. National College's National College-Cincinnati web site advertised that upon graduation students will have received extensive clinical experience and will be prepared to assume the full range of responsibilities associated with the surgical technology profession This was a misrepresentation.

3

12. National College's admission representative told Prosser that upon graduation she would be able to work in hospital and surgical center operating rooms, and sit for the certification examination.

13. Prosser believed and relied upon National College's statements. Consequently, she enrolled in the National College Surgical Technology Program.

14. As part of the National College program Prosser was to complete an externship at a local hospital or surgery center. Prosser was required to assist in one hundred twenty-five surgeries and assist for more than 360 hours in the operating room. Prosser was to perform the clinicals without receiving compensation, for a forty hour week, for a period of more than two months. National College personnel were to monitor the extern. A clinical site preceptor supervised an extern. A clinical course grade was to be given. While Prosser waited five months for a clinical placement, she attended a weekly practice lab at the school.

15. Prosser enrolled with National College during December 2006. Classes began on March 10, 2007. She finished class work during February 2009. Prosser then waited five months for an extern placement at a clinical site. She was scheduled to graduate during June 2009. She began her clinicials in late July 2009 and completed her cases by late October 2009.

16. Completing the clinical cases and operating room hours, along with graduation from an accredited program are prerequisites for taking the surgical technologists certification examination.

17. Prosser received her associate degree, from National College's surgical technology program, at a time when the program was not accredited by CAAHEP. As a result Prosser was not qualified to take the Certified Surgical Technologist examination, until late May 2010. Without

4

graduation from an accredited surgical technology program and without surgical technologist certification, Prosser cannot obtain employment as a surgical technologist.

18. National College, during December 2006 and thereafter, committed unfair or deceptive acts in violation of ORC §1345.02 in the subject consumer transaction with Prosser, by not providing her with a written signed contract that specified the obligations of the National College's school.

19. Pursuant to ORC §1345.05(B)(2) the Ohio Attorney General is authorized to promulgate rules to enforce ORC §1345.02. These rules include Ohio Administrative Code (herein *OAC*) §109:4-3-02 and §109:4-3-09.

20. National College's written advertisements, brochures and handbook, which offered the sale of educational services, and its website advertisements violated OAC §109:4-3-02, by not clearly and conspicuously stating material exclusions, reservations, limitations, modifications or conditions. One such limitation was that the Cincinnati Surgical Technology program was not accredited by CAAHEP, and that without accreditation a graduate could not be examined for certification. Other undisclosed limitations were that there were long delays up to one year, prior to placement at clinical sites and that no clinical facilities were under contract for student externships.

21. National College in the subject consumer transactions violated OAC §109:4-3-09 by accepting payment in full, without delivering the services agreed upon or without making a full refund.

22. National College knowingly committed unconscionable acts in violation of ORC §1345.03 in the subject consumer transaction, by taking advantage of the Prosser's inability to

5

reasonably protect her interests because of her inability to understand the language of the agreement; and by requiring the consumer to enter the consumer transaction, the terms of which, the National College knew were substantially one-sided in its favor; and by knowing, at the time the consumer transaction was entered, of the inability of the Prosser to receive a substantial benefit from the subject of the consumer transaction. National College took advantage of the circumstance that Prosser was without knowledge of college accreditation processes.

23. National College knowingly committed unconscionable acts in violation of ORC §1345.03 in the subject consumer transaction, by shifting the risk of not obtaining accreditation from itself to Prosser.

24. Prosser requested refund of tuition on the failure to graduate from an accredited program. National College refused to refund the tuition.

25. Prior court decisions have held that a non-accredited commercial college program that solicited and entered consumer transactions, knowingly committed deceptive and unconscionable acts in violation of ORC §1345.01, *et seq*. These decisions include: *Malone v. Academy of Court Reporting*, 64 Ohio App.3d 588 (1990, Franklin County); *Schneider et al v. Academy Court Reporting*, 1994 WL 1097718 (Ohio App. 10 Dist.); *Maulin v. Academy of Court Reporting,* (1992, Summit App. No. 14947; *Drexel v. Columbus Tech. Institute*, 1990 WL 2925 (Franklin App. No. 88AP-271.

26. Prosser suffered non-economical damages, that are limited to $5,000.00, and that include: humiliation, extreme emotional distress, sacrifice of time and loss of capacity to earn a higher income, due to National College's violations of ORC § 1345.02. and ORC § 1345.03.

6

27. Prosser resigned her employment during March 2007, to devote full time to her studies. National College's violations of ORC § 1345.02. and ORC § 1345.03 directly caused Prosser to loose earnings totalling, at least, $76,000 during calendar years 2007 through April 10, 2010, when Prosser enrolled in a nursing program, at another college.

28. Prosser's actual damages are the sum of economical damages of about $ 22,000 in tuition and fees plus her lost earnings of, at least, $76,000 and $5,000 of non-economical damages, arising from violations of ORC §1345.02, ORC §1345.03 and the Rules at OAC §109:4-3-02 and OAC §109:4-3-09.

29. National College's acts violate the rules at OAC §109:4-3-02 and OAC §109:4-3-09 promulgated by the Attorney General and are similar to the violations in prior court decisions. Consequently, statutory damages equal to three times the actual economic damages apply. Pursuant to ORC §1345.09, National College is civilly liable to Plaintiff, in the approximate amount of, at least. two hundred ninety-four thousand dollars ($ 294,000) plus $ 5,000 of non-economical damages, plus reasonable attorney's fee.

## CLAIM TWO - Breach of Contract, Alternate

30. Prosser, incorporates by reference, the foregoing allegations of paragraphs numbered 1. and 5. through 17., 24., 27. And 28. as if fully rewritten here.

31. National College was contractually obligated to have a surgical technology program that was accredited, to have arrangements with clinical facilities for externships and to have a program without waiting lists and long delays for clinical placement. Additionally there is an implied

7

obligation to act with good faith and deal fairly with the Prosser. National College breached each of these obligations. Prosser fully performed her contract obligations to National College.

32. National College breach its contract with Prosser and is liable to her for her tuition and fees, $ 22,000 plus her lost income, $76,000 in the total amount of $98,000.

## CLAIM THREE - Fraudulent Inducement, Alternate

33. Prosser, incorporates by reference, the foregoing allegations of paragraphs numbered 1. and 5. through 17., 24., 27. And 28., as if fully rewritten here.

34. National College's agents and employees intentionally misrepresented that the surgical technology program was accredited or would be accredited upon graduation, that there were extern positions for the required clinicals in affiliated hospitals, that there would be no delays in graduating from the program, and that the graduates from the program would be qualified to take the licensing examination for certification.

35 These intentional misrepresentations of fact were material to Prosser's enrolling and continuing with National College. These misrepresentation were made falsely, with knowledge of the falsity, or with utter disregard and recklessness, as to whether they were true or false.

36. These misrepresentations were made by National Colleges employees with the intent of misleading Prosser into relying upon them. Prosser justifiably relied upon the misrepresentations. As a direct and proximate result of reliance on the misrepresentations she has suffered injuries including: loss of tuition and fees paid National College, cost of transportation and child care, lost earnings and emotional distress.

8

37. National College with malice fraudulently induced Prosser to enter said contract. Consequently she was damaged in the amount of $103,000.

**WHEREFORE**, Prosser demands judgment against National College NATION COLLEGE OF VIRGINIA, INC., as follows:

**a)** An award in favor of Prosser pursuant to CLAIM ONE, under ORC §1345.09 in the amount of $299,000 plus attorney fees and cost;

b) alternately an award under CLAIM TWO for breach of contract in the amount of $96,000; and

c) alternately an award under CLAIM THREE for fraudulent inducement in the amount of $103,000 compensatory damages plus punitive damages and attorney fees;

Respectfully submitted,

John A. Rebel (0031771)
Attorney for Plaintiff
McKinney & Namei Co., L.P.A.
15 East Eighth Street
Cincinnati, Ohio 45202-2087
Phone: (513) 721-0200
Fax: (513) 632-5898

**JURY DEMAND:**
Plaintiffs demand a trial by jury.

John A. Rebel (0031771)

9